WM. ANSON v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided March 28, 1906.

**1.—Negligence—Peremptory Charge—Killing Stock.**

Evidence tending to show fast running and failure to keep proper lookout and to discover stock on the track at a point where they might be, held sufficient to require the question of defendant's negligence in killing horses to be submitted to the jury.

**2.—Evidence—Negligence—Cross-Examination.**

An engineer who had testified that he did not strike the animals for the killing of which suit was brought, could be cross-examined as to whether he did not sometimes run over crossings before knowing that he was approaching them.

**3.—Negligence—Fast Running—Custom.**

A train dispatcher who had testified that a certain train was late, its

fast running being an issue, could be questioned as to the custom in such cases as *to making* up lost time.

**4.—Evidence—Negligence—Fencing—Subsequent · Changes.**

It was not competent to prove, on the question of negligence in killing stock by a railway, that the defendant company had fenced its track at the point in question after the accident.

Appeal from the District Court of Coleman County. Tried below before Hon. John W. Goodwin.

*Woodward, Baker & Woodward,* for appellant.—On error in giving peremptory charge. Choate v. San Antonio & A. P. Ry. Co., 37 S. W. Rep., 319.

*J. W. Terry* and *A. H. Culwell,* for appellee.—The evidence did not raise any issue of discovered peril, and the injury was at a crossing. Gulf, C. & S. F. Ry. Co. v. Anson, 11 Texas Ct. Rep., 97; Galveston, H. & N. Ry. Co. v. Blau, 73 S. W. Rep., 1074; Henry v. Missouri, K. & T. Ry. Co., 65 S. W. Rep., 644; Missouri, K. & T. Ry. Co. v. Kennedy, 76 S. W. Rep., 943; International & G. N. Ry. Co. v. Erwin, 67 S. W. Rep., 466; Galveston, H. & S. A. Ry. Co. v. Reitz, 65 S. W. Rep., 1088; Galveston, H. & S. A. Ry. Co. v. Cassinelli, 9 Texas Ct. Rep., 104.

EIDSON, Associate Justice.—This is a suit brought by appellant in the court below for damages in the sum of $1,500 against appellee for killing two polo ponies in March, 1903. Upon the first trial of this case before a jury, the appellant recovered judgment for the sum of $1,000 as damages, which was appealed by appellee and reversed by this court October 26, 1904 (11 Texas Ct. Rep., 97). The case was again tried in the District Court of Coleman County on the 5th day of September, 1905, and after the evidence was all in and after the court had heard argument of counsel on the law, it instructed the jury per-emptorily to find for appellee, upon the ground that the evidence failed to show any negligence upon the part of the railway company causing the death of the horses; and the jury having so found, judgment was accordingly entered.

Appellant's first, second, third and fourth assignments of error complain of the action of the court below in peremptorily instructing the jury to render a verdict in favor of the defendant. Appellant's contention under these assignments is that there was sufficient evidence adduced upon the trial of the case tending to show negligence upon the part of the railway company, which was the proximate cause of the death of the horses, to require the court below to submit the issue of negligence to the jury for their determination.

In Lee v. International & G. N. Ry. Co., 89 Texas, 589, the Supreme Court uses this language: "Negligence, whether by·the plaintiff or defendant, is generally a question of fact and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question. In other words, to authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary

minds to differ as to the conclusion to be drawn from it." And in Choate v. Railway Co., 90 Texas, 88, said court, in referring to the language above quoted, says: "We think this is the correct rule, and that the court is not justified in taking from the jury a question of fact, except in case the evidence is such that there is no issue made for the jury to determine."

The question for our determination is whether or not the evidence adduced on the trial of this case as to negligence upon the part of the railway company would lead ordinary minds to but one conclusion, and that is that there was no actionable negligence on the part of the railway company. From a careful examination and consideration of the evidence embraced in the record, we do not think we would be warranted in answering this question in the affirmative. In other words, we do not think the evidence as to negligence on the part of the defendant is of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. We believe that the evidence was sufficient to raise the issue of negligence *vel non* on the part of the defendant, and that therefore it should have been submitted to the jury. The pleadings of appellant alleged as grounds of negligence on the part of appellee, defendant in the court below, that its employes operating its train at the time the horses were killed were not using ordinary care and caution in operating the train, but were running it at a high, dangerous, negligent, and reckless rate of speed, and at a place where they knew and had reason to believe horses and stock would be upon the track, and by the use of ordinary diligence could have discovered said horses on its track, and by the use of ordinary care could have prevented killing said horses after discovering them on its track.

There is testimony in the record tending to show that the train was run at a very high rate of speed at and near the place where the horses were killed, and that the track was practically level and straight, so that stock at or about the crossing where the horses were killed could be seen from about 500 yards to half a mile west of said crossing; that a train running at about the rate of speed the train was shown to be running on this occasion could be stopped within 500 yards, and with ordinary appliances, the least distance within which it could be stopped would be 100 yards; that the operatives of the train knew of the conditions about this crossing, and knew that stock might be at or near same at any time; that there were but two trains that passed the place where the accident occurred the night of its occurrence, one going east and the other going west; that the one going east was about two hours late. There was evidence tending to show that the east-bound train gave several short blasts or sounds of the whistle, known as stock signals at a point near where the horses were killed. The horses were turned out of the lot on the north side of the track, and were traced by their tracks to and on the crossing, and were found lying east of the road that crossed the right of way. There was testimony also tending to show that the horses were bruised on the right side, which tended to show that they were struck as they were crossing the track from the north by an east-bound train. We think this testimony tends to show that the horses were killed by the east-bound train, and that the operatives of the train were negligent in failing to keep a proper lookout for stock

at the place of the accident, and that such negligence was the proximate cause of the injury to the horses.

Appellant's fifth assignment of error complains of the action of the court below in not permitting him to read in evidence to the jury, as a part of the evidence of James Stanton, an engineer in charge of one of defendant's trains that ran over the crossing on the date of the alleged killing of the horses in question, the following portion of said witness's deposition: "Running at a high rate of speed, as we sometimes do, and our attention being particularly addressed to something imperative at the moment, we sometimes pass crossings or are on crossings before we know it, but this very rarely ever happens." It appears from the record that this testimony was excluded by the court below upon the ground that the same was irrelevant and immaterial, and that it was not proper to know what the witness may or may not have done on other occasions and places. This testimony, in our opinion, was admissible on cross examination as tending to discredit the testimony of this witness to the effect that he did not operate the train at an unusually high rate of speed, and did not strike any horses on the occasion in question.

By his sixth assignment of error, appellant complains of the action of the court below in not permitting him to prove by the train dispatcher of defendant on duty at the date of the alleged killing of the ponies in question (after he had testified that the east-bound passenger train when it passed the crossing in question where the ponies were alleged to have been killed by defendant's train was two hours late) that when it is late the train crew sometimes run faster than schedule time, for the purpose of making up lost time, but it was not the universal practice for them to do so. This testimony was excluded by the court below upon the grounds that same was irrelevant and immaterial, and that it was not proper to know what may or may not have been done on other occasions by other train crews, that the evidence should be confined to the part of the road in question and to the crew in question.

We are of the opinion that the court erred in excluding this testimony. This testimony was admissible as tending to show that the train was running at a very high rate of speed on the occasion in question; and was also admissible on cross examination as tending to weaken the testimony of this witness to the effect that the train was operated at the usual rate of speed.

We are of opinion that the testimony, the exclusion of which is complained of by appellant in his seventh assignment of error, was properly excluded for the reasons stated by the trial court in his explanation appended to appellant's bill of exceptions.

It is not necessary for us to consider appellant's other assignments of errors. For the errors indicated above, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*